# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| Ivan Cuevas | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| City of Aurora, | ) | |
| Aurora police chief Kristen Ziman, sued | ) | |
| In her Individual Capacity, | ) | |
| Officer David Brian, #302, sued in his | ) | |
| Individual Capacity, | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, IVAN CUEVAS, by and through his counsel, MELINDA POWER, and alleges the following facts and claims against Defendants KRISTEN ZIMAN, DAVID BRIAN #302, and the CITY OF AURORA. Plaintiff seeks to hold Defendants accountable for their violations of Plaintiff's constitutional rights, including the Fourth Amendment right to be free from unlawful seizure and arrest, and to be free from excessive force from police officers, and related state law violations. Plaintiff seeks to hold Defendant City of Aurora and Aurora police chief Kristen Ziman accountable pursuant to *Monell* policies and practices regarding hiring and retention of police officers and permitting officers to falsely arrest civilians and to use excessive force against them. In support, Plaintiff Cuevas alleges as follows:

## INTRODUCTION

1. Without an arrest warrant or probable cause, Defendant Brian unlawfully stopped, seized, arrested, falsely charged, and used excessive force against Plaintiff.

2. As a result, Plaintiff was falsely arrested, bruised, injured, and held for hours in the Aurora Police Department lockup.

1

3. Further, Plaintiff suffered physical injury and emotional trauma from the humiliation of being stopped, seized, arrested, beaten and held in custody for a crime he did not commit by Defendant Brian.

**PARTIES**

4. Plaintiff Ivan Cuevas is an Illinois resident who lives in Aurora. At the time of the incident, he co-owned a business in Aurora where the events described below took place.

5. Defendant Brian is an Aurora Police Officer who committed the acts set forth below as an employee of the city of Aurora.

6. Brian engaged in the conduct complained of in the course and scope of his employment and under color of law.

7. Defendant Ziman was the Chief of Police at the time of this incident and is sued in her individual capacity.

8. Defendant City of Aurora ("City" or "Aurora") is a municipal corporation duly incorporated under the laws of the State of Illinois and was the employer and principal of the individual Defendants at all times relevant to this complaint.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.

10. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and Defendant City of Aurora is a municipal corporation located in this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**FACTS**

11. In the evening of July 30, 2020, an individual called 911 and made an unclear and

unintelligible report regarding a gun.

12. The individual on the phone did say that the person with the gun was about 5'6 and 120 lbs. When the 911 operator pressed the individual for further details, he hung up. The operator was unsuccessful in re-establishing contact.

13. Police dispatch reported the vague, incomplete 911 call and Defendant Brian responded.

14. At that time, Plaintiff lived and co-owned a business with his girlfriend, Maria Saltijeral, at 217 E. Galena Blvd in Aurora, Illinois.

15. Plaintiff lived in an upstairs apartment that was above and next to his business.

16. Immediately before Brian arrived on the scene; Ms. Saltijeral heard a loud crash coming from their business.

17. Plaintiff offered to investigate the business to ensure nothing was damaged.

18. As Plaintiff went to investigate, he took a beer and his pet dog so that he could let his dog out in the backyard for a few minutes.

19. When Brian arrived on the scene, he saw Plaintiff exit his apartment with his pet.

20. Brian pointed his flashlight at Plaintiff.

21. Brian did not see Plaintiff with a weapon or gun.

22. Brian did not see Plaintiff do anything illegal.

23. Brian nevertheless approached Plaintiff, who continued into his shop to confirm the business was all right and to then let his dog out into the backyard.

24. Brian had never seen Plaintiff before this incident.

25. Brian claims he addressed Plaintiff.

26. Plaintiff did not hear what, if anything, Brian said.

27. Plaintiff unlocked the door to his business and entered. He locked the door behind him.

28. After Plaintiff entered the building, Brian approached the building.

29. Brian saw Plaintiff head to the rear of the shop and exit the back door with the dog to the backyard.

30. Without any legal justification, Brian ordered Plaintiff to come out of the building and talk to him.

31. Plaintiff returned to the shop from the backyard and heard Brian pounding on the door and saw other officers who had arrived on the scene.

32. Brian had his service weapon drawn and in the "ready" position as he knocked on the door, demanding that Plaintiff open it.

33. Plaintiff told Brian that they could speak through the closed door.

34. In response, Brian again commanded Plaintiff to open the door.

35. Brian leveled his gun at Plaintiff's head through the shop window.

36. Brian threatened to shoot Plaintiff and kick the door down if Plaintiff did not comply.

37. Solely due to Brian's threats, Plaintiff complied with the order and opened the door.

38. As soon as Plaintiff opened the door to his business, he was swarmed by Aurora police officers, pulled out of his own store, and placed under arrest.

39. Plaintiff asked Brian why he wanted to question him and asked to be told what was going on.

40. Instead of answering, Brian grabbed and roughed up Plaintiff.

41. As Plaintiff tried to explain he owned the store and was not doing anything wrong, Brian was vulgar and verbally abusive to Plaintiff. He called him, among other things, a "piece of shit," and falsely insisted that he was fighting.

42. Plaintiff was pushed to the ground.

43. Plaintiff's arms were forcibly held against the pavement.

44. Brian forcibly held Plaintiff's forehead against the pavement.

45. During this unlawful seizure and detainment, Plaintiff suffered several cuts and bruises on his arms and face.

46. In addition to the physical pain and trauma Brian inflicted, he also caused Plaintiff severe mental and emotional distress.

47. Once forcibly restrained, Plaintiff was dragged up off the ground.

48. Brian inaccurately told Plaintiff he was being arrested for non-compliance.

49. Plaintiff had complied with Brian's order to open the door of his business even though Brian did not have a warrant or any justification to issue that command.

50. Plaintiff was put in the back of a patrol car and taken to the Aurora police station.

51. Plaintiff was processed and kept in a holding cell for several hours.

52. Brian appeared and questioned Plaintiff.

53. When Plaintiff indicated he wanted to go home to his partner and children, Brian mocked him.

54. Brian's tone and the content of his speech to Plaintiff caused Plaintiff to be very upset.

55. Brian falsely accused Plaintiff of being a criminal gang member, drug user, and a drunk.

56. Brian insisted that if Plaintiff hadn't wanted to be charged with resisting arrest, he should have permitted Brian into his store.

57. Brian had had no legal reason to stop and question Plaintiff and Plaintiff had no legal obligation to speak to Brian.

58. As a result of Brian's actions, Plaintiff was falsely arrested, battered, held in custody, falsely charged with resisting arrest and forced to attend court on a false charge.

59. As a result of Brian's actions, Plaintiff suffered physical and emotional trauma, fear, anxiety, his freedom of movement has been curtailed and he has been forced to retain an attorney to represent him.

60. The City of Aurora, and the police chief at the time, Defendant Ziman, had a *de facto* policy in effect that allowed the police to falsely stop, detain, seize, arrest and use excessive force against civilians and then to falsely charge them. For example, Brian has been h sued in a variety of lawsuits, including *Malik v. Brian*, 2000-06737 and *Davis v. Brian*, 2011-00022.

61. The City of Aurora and police chief, Defendant Ziman, had a *de facto* policy to either hire or retain police officers who had a history and practice of abusing civilians.

62. The City of Aurora and police chief, Defendant Ziman, had a *de facto*, policy of failing to adequately train its officers to ensure that the officers didn't stop, detain, seize, arrest and use excessive force against civilians and then to falsely arrest and charge them.

**COUNT I**
**FOURTH AMENDMENT TO THE US CONSTITUTION**
**FALSE ARREST**
**42 U.S.C. § 1983**
**(DEFENDANT BRIAN)**

63. Each of the paragraphs in this Complaint is incorporated as if restated fully

herein.

63. Plaintiff realleges the above paragraphs with the same force and effect as if fully set forth herein.

64. Brian's actions and conduct, as set forth above, in falsely arresting Plaintiff on July 30, 2020, under color of law and without probable cause violated his Fourth Amendment right to be free from unreasonable arrest and Brian should be held liable for doing so pursuant to 42 U.S.C. § 1983.

65. Brian's actions and conduct were the direct and proximate cause of the violation of Plaintiff's Fourth Amendment rights and caused him emotional distress, fear, anguish, trauma, and loss of liberty as set forth more fully above.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, Plaintiff demands compensatory damages, plus the costs of this action and attorney fees from Defendants; in addition, Plaintiff demands punitive damages against Brian since he acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and whatever additional relief this Honorable Court deems equitable and just.

**COUNT II**
**FOURTH AMENDMENT to the US CONSTITUTION**
**EXCESSIVE FORCE**
**42 U.S.C. § 1983**
**(DEFENDANT BRIAN)**

67. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

68. As described in the preceding paragraphs, the conduct of Brian towards Plaintiff constituted excessive force in violation of the United States Constitution when he pushed Plaintiff to his knees and treated him very roughly while he was on the ground and

during the process of seizure.

69. The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and/or reckless indifference to the rights of Plaintiff

**WHEREFORE**, pursuant to 42 U.S.C. § 1983, Plaintiff demands compensatory damages, plus the costs of this action and attorney fees from Defendants; in addition, Plaintiff demands punitive damages against Brian since he acted willfully, wantonly and/or in reckless disregard of Plaintiff's rights, and whatever additional relief this Honorable Court deems equitable and just.

### COUNT III
### *MONELL* PRACTICE POLICY and CUSTOMS CLAIM
### 42 U.S.C. § 1983
### (CITY OF AURORA and DEFENDANT ZIMAN)

70. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

71. Brian's actions were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Aurora police department.

72. Upon information and belief, Ziman planned, engaged in *de facto* policies, practices, and customs which included, *inter alia,* a) the failure to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers engaged in committing violations of police department rules and regulations, including the excessive use of force, false detentions, false arrests, false imprisonments, the physical and verbal abuse of civilians, and other police abuse, particularly in cases where the officers have repeatedly been accused of said acts; and b) encouragement of false detentions, false arrests, false imprisonments, and the attendant use of excessive force.

73. Further, the constitutional violations and damages to Plaintiff that occurred as

described herein were directly and proximately caused by the unofficial, unconstitutional, tacit policy of authorized policy makers of the City, including Ziman, who have, for years, deliberately ignored and indulged in violence and intimidation against civilians by officers; and who deliberately failed to supervise and control such officers to prevent violations of civilians' rights.

74. In addition, the City, the police department and Ziman are well aware, and have been told and notified many times, that such illegal arrests occur, and happen again and again, to the point where a pattern and practice of harassment and false arrest civilians is readily evident, going back many years.

75. These polices are evidenced, *inter alia,* by the following: a) the systemic encouragement, from the Chief of police on down, of false detentions, false arrests, false imprisonments, by promoting officers who make false arrests, giving them high performance ratings, based in large part on the number of arrests which they make, and ignoring the large number of citizen complaints and lawsuits made against many of these officers when making these promotions, assignments, and ratings; b) the failure to properly discipline, monitor, assign, counsel, transfer, supervise and otherwise control officers, including Brian, particularly after the department has, or should have, identified these officers, including Brian, as a "repeater" with multiple complaints of false arrest and other abuse or otherwise as actual or potential problem officers.

76. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct, including excessive force, false detentions, false arrests and false imprisonments and other abuse of citizens of which they are aware, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during

official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases.

77. The *de facto* policies, practices, and customs of failing to train, supervise, monitor, discipline, counsel and control, the code of silence, and the encouragement of false arrests and prosecutions are interrelated and exacerbate the effects of each other.

78. The aforementioned policies, practices and/or customs of failing to supervise, discipline, monitor, control, etc., the police code of silence, and the encouragement of false arrests, imprisonments, and prosecutions, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia,* because Brian had good reason to believe that his misconduct would not be revealed or reported by fellow officers or their supervisors, that his denials would go unchallenged by these supervisors and fellow officers, including Ziman and that he was effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

79. But for the belief that he would be protected, both by fellow officers and by the department, from serious career consequences, Brian would not have engaged in the conduct that resulted in the injuries to Plaintiff.

80. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Brian to commit the aforesaid acts against the Plaintiff and therefore acted as direct and proximate causes of said constitutional violations, and injuries to the Plaintiff.

81. Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Brian, was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

82. These policies, practices and customs encouraged, *inter alia,* excessive use of

force, the making of false statements and reports, and physical and verbal abuse of civilians, and were separately and together, a direct and proximate cause of the unconstitutional acts committed by Brian in this case and the injuries sustained by Plaintiff.

83. As a direct and proximate result of the conduct and unspoken policy of Defendants described herein, their failure to take reasonable steps to remedy the pattern and practice of false arrest and use of excessive force and misconduct, and their deliberate indifference to the serious threat to the rights of civilians, Plaintiff was denied his constitutional, statutory, and common law rights as stated below, and has suffered, and continues to suffer, mental and emotional distress, embarrassment, discomfort, anxiety, and harm.

**WHEREFORE**, Plaintiff demands a judgment against the City of Aurora and Ziman for compensatory damages, plus costs and attorneys' fees and whatever additional relief this court finds equitable and just.

## COUNT IV
## *MONELL* HIRING and STAFF MAINTENANCE CLAIM
## 42 U.S.C. § 1983
## (CITY OF AURORA and ZIMAN)

84. Each of the paragraphs in this Complaint is incorporated as if restated fully herein.

85. Brian's actions were possible because of Aurora and Ziman's deliberate indifference in keeping officers with multiple, credible complaints on their record on Aurora Police Department's staff where they may still harass civilians and commit constitutional violations with no credible threat to their career or pensions.

86. Brian received 76 complaints between 1996 and 2021, roughly half of which were sustained.

87. Between 2016 and 2020, Brian received seven complaints, more than three times the average for Aurora police officers.

88. In 2018, Ziman suspended Brian for sexually harassing another department employee. Upon suspension, Ziman wrote Brian a personal letter stating that she hoped the suspension would "Cause . . . [Brian] to adhere to all department rules and regulations."

89. Despite the suspension, Brian still earned citations and complaints at a high rate upon his return to the police force. In 2019, he was cited twice for violating Aurora police department procedures regarding vehicular pursuit and also suspended for sexually harassing another department employee.

90. Upon his second suspension, Ziman gave Brian the clearly ineffectual and *pro forma* written admonition, but he remains on the police force.

91. On the evening of July 30, 2020, Brian was out on the streets as an Aurora police officer, able to abuse his legal authority because, despite two suspensions over the serious issues and a large number of credible complaints and citations concerning his attitude and actions towards the citizens of Aurora, Ziman and the City of Aurora continued to employ him and allow him to continue with his illegal behavior.

92. To allow Brian to continue to patrol the streets of Aurora shows deliberate indifference to the civil rights of Aurora citizens.

93. Fellow Aurora police officers could look to Brian's example to surmise that even disciplinary action as severe as suspension will not pose a serious threat to an officer's career or their ability to violate the law.

94. As a direct and proximate result of the unspoken policy and practices of the City of Aurora and Defendant Ziman as described herein and their failure to take reasonable steps to take Brian off the streets, Plaintiff was denied his constitutional, statutory, and

common law rights. He has suffered, and continues to suffer, mental and emotional distress, embarrassment, discomfort, anxiety, and harm.

**WHEREFORE**, Plaintiff demands a judgment against the City of Aurora and Ziman for compensatory damages, plus costs and attorneys' fees and whatever additional relief this court finds equitable and just.

PLAINTIFF DEMANDS TRIAL BY A JURY.

Dated: July 27, 2022

s/Melinda Power

Melinda Power
West Town Law Office
2502 W. Division, Chicago, Illinois 60622
773/278-6706 F: 773/278-0635
Melindapower1@gmail.com